AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| United States of America<br>v.<br>GEORGE MELVIN LAIL<br><br>*Defendant(s)* | )<br>)<br>) Case No. 3:20MJ421<br>)<br>)<br>) |

FILED
RICHARD W. NAGEL
CLERK OF COURT
9/10/20
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __9/7/2020__ in the county of __Montgomery__ in the __Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. s. 922(g)(1)&924(a)(2) | felon in possession of a firearm |

This criminal complaint is based on these facts:

See Attached Affidavit of Patrick A. Bell

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Patrick A. Bell, TFO of the FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/10/20

_____
*Judge's signature*

City and state: Dayton, Ohio

Sharon L. Ovington, US Magistrate Judge
*Printed name and title*

## AFFIDAVIT

Patrick A. Bell, hereinafter referred to as the "Affiant", being duly sworn, deposes as follows:

## INTRODUCTION

1. Your Affiant is a Task Force Officer with the United States Federal Bureau of Investigation (FBI) within the meaning of 21 U.S.C. § 878. That is, an officer of the United States who is empowered by law to conduct criminal investigations of and to make arrests for offenses enumerated in 21 U.S.C. § 878. The information contained in this Affidavit is either personally known by your Affiant or relayed to him by other law enforcement officers involved in subject investigation.

2. Your Affiant is a law enforcement officer and has been employed as such for the past nineteen years. Since March 2013, your Affiant has been assigned to the FBI Dayton Field Office as a Task Force Officer (TFO). Since 2001, your Affiant has been employed as a sworn police officer with the City of Dayton, Ohio. Since 2008, your Affiant has been assigned to the investigation of narcotics and weapons offenses. As such, your Affiant has been involved in narcotics related arrests, executed search warrants that resulted in the seizure of narcotics, participated in undercover narcotics purchases, and supervised the activities of informants who have provided information and assistance resulting in narcotics purchases.

3. This affidavit is made in support of an application for a federal arrest warrant and complaint against **GEORGE MELVIN LAIL** for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The facts in this affidavit are submitted for the purpose of establishing probable cause, and do not include every fact known to your Affiant.

## FACTS

4. On September 7, 2020 at approximately 1400 hours, Dayton Police Officers Wayne Hammock and Vincent Carter were working as a two man crew and patrolling the area of North Gettysburg Avenue and Hoover Avenue. Officers witnessed a white Dodge Durango, New York license plate HWV5906, fail to stop at the red light on southbound Gettysburg Avenue at Hoover Avenue. Officer Hammock, who was driving the cruiser, immediately turned the vehicle around and attempted to catch up to the Durango to make a traffic stop for the violation. Officers could see the Durango weaving through traffic on

southbound Gettysburg Avenue and then pull into the Shell gas station parking lot at West Third Street and Gettysburg Avenue. The Durango pulled directly through the lot at a high rate of speed and then westbound on West Third Street. Officers were able to catch up to the Durango as it approached Elmhurst Road. The Durango then pulled into the O'Reilly Auto Parts parking lot at 4347 West Third Street in Westtown Shopping Center.

5. At this point, Officers were able to initiate their overhead lights to conduct a traffic stop for the violation. The driver of the Durango, later identified as **GEORGE MELVIN LAIL,** pulled over in the parking lot of Westtown Shopping Center. Officers contacted **LAIL**, notified him of his traffic violation, and obtained his identification. Officers determined that the vehicle was a rental car rented in **LAIL's** name. They then returned to the cruiser to complete the traffic citations for the red light violation and failure to stop at the sidewalk when exiting the Shell gas station lot. While doing so, officers determined that **LAIL** was on parole for felonious assault and at this point decided to remove him from the vehicle for officer safety while completing the citations.

6. Officers returned to the rental car and contacted **LAIL** at the Durango for a second time. Officers asked **LAIL** what he was on parole for and he said breaking and entering. Officers then requested that **LAIL** step out of the vehicle, explaining that they wanted to create space between him and the vehicle. **LAIL** immediately became argumentative and stated that he did not need to exit the vehicle. An officer explained that they properly could ask **LAIL** to step from the car and again requested that he do so. **LAIL** continued to argue with the officers concerning whether he had to exit the vehicle.

7. At some point, one of the officers opened the driver's side door to remove **LAIL** from the vehicle. While continuing to argue with officers, **LAIL** began to exit the vehicle, dropping his cell phone on the ground. **LAIL** retrieved the cell phone from the ground, but then slumped back into the driver side of the car. Officers now grabbed **LAIL** and attempted to remove him from the car. **LAIL** resisted their efforts, pulling Officer Hammock into the driver's area with him. He then attempted to place the vehicle in drive and flee the scene. However, prior to **LAIL** getting the vehicle in drive, Officer Hammock was able to hit the button to turn off the engine. Officers then threatened to use a Taser and **LAIL** began to comply by stepping out of the vehicle. **LAIL** was then escorted to the hood of the cruiser, where he continued to resist officers and tense up to avoid being handcuffed. While officers attempted to handcuff

**LAIL,** he was able to get out of their control and flee on foot through the parking lot.

8. Officer Carter attempted to tase **LAIL** as he fled, but it was unsuccessful. **LAIL** continued to flee on foot toward the Metro PCS store in the Westtown shopping center. Officers continued to pursue **LAIL** on foot and order him to stop. As he got closer to the Metro PCS store, **LAIL** fell onto the ground. Officers arrived at **LAIL** as he was on the ground and attempted to place him in handcuffs. **LAIL** continued to refuse to give up his hands by placing them underneath his body and refusing all commands. (Based on my training and experience, I know that when an individual refuses to give up his hands, it creates concerns for officers that the individual is reaching for a weapon). Officers then used force to get **LAIL** to comply and were then able to place him in handcuffs and under arrest. **LAIL** was transported to the hospital and checked for injuries and then booked into the Montgomery County Jail for the weapons charge, a parole violation, and issued traffic citations.

9. After securing **LAIL,** Officer Hammock then completed an inventory search prior to towing the vehicle. Upon looking in the driver side floorboard area, Officer Hammock located a black and silver firearm sticking out of the loosened panel in the middle console area by the driver side floorboard. The panel appeared to be intentionally opened and was directly next to where **LAIL's** right leg would have been and accessible from the driver's seat. Hammock recovered the handgun and found it to be a 9mm Taurus PT 111 Millennium G2, serial number TIW89190. The weapon was loaded with six rounds in the magazine and none in the chamber. The gun was recovered and placed into the Dayton Police property room as evidence and sent to the Miami Valley Crime Laboratory for DNA analysis.

10. Additionally, Officer Hammock was wearing a body camera during the encounter with **LAIL** at the vehicle. During the moments when **LAIL** had pulled Officer Hammock into the passenger compartment of the vehicle, Officer Hammock's body camera captured an image of the back portion of the gun in the location from which it was later recovered.

11. On September 9, 2020, detectives listened to the phone conversations of **LAIL** from the Montgomery County Jail. On one call, **LAIL** spoke to an unknown male. **LAIL** told the man that he (**LAIL**) was arrested for carrying a concealed weapon. The male asks **LAIL** if the police found the black and gray one (referring to the firearm recovered by police during this incident).

3

**LAIL** says no at first and then immediately after states "yep", acknowledging that the black and gray gun was recovered. The male then quickly concocts a story to explain how the firearm got in the vehicle and tries to get **LAIL** to understand him and go along with it.

12. Based on my training and experience, I am aware that Taurus firearms are not manufactured in the state of Ohio. As such, I conclude that this firearm previously moved in interstate and/or foreign commerce to reach **LAIL** in this state.

13. I have conducted a criminal history records check concerning **GEORGE MELVIN LAIL.** I learned that **LAIL** has prior convictions which were punishable by a term of imprisonment exceeding one year. On or about June 21, 2010, in the Court of Common Pleas, Montgomery County, Ohio, Case number 2009CR04273, of 2911.11 Aggravated Burglary with a deadly weapon (F1) with a 3 year gun specification and 2903.11 Felonious Assault with a deadly weapon (F2) with a 3 year gun specification in violation of the Ohio Revised Code. **LAIL** currently remains on post-release control with the Ohio Adult Parole Authority. Given these circumstances, **LAIL** knew that he had been convicted of a felony punishably by a term of imprisonment exceeding one year.

14. Based upon the above information, your Affiant believes that probable cause exists to conclude that on September 7, 2020, in the Southern District of Ohio, GEORGE MELVIN LAIL knowingly possessed, in and affecting interstate commerce, a firearm. Such possession occurring after **LAIL** had been convicted of a felony punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

*Patrick A. Bell*
Patrick A. Bell, Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me this __10th__ th day of September, 2020.

Sharon L. Ovington
United States Magistrate Judge